Claude was a lieutenant in the military. He was originally intended to be an aviator but because of poor eyesight was assigned to the military's chemical warfare division where approximately one month before the end of World War I he was exposed to influenza. I'm not sure where this is going. Does this have anything to do with the issues before us? Yes, your honor. Well, where it goes is this. This gave rise to the actual trust and in the actual will of Mr. Benningham himself he sets forth that he himself believed that he was given great gifts by God. I'm sure I'm sure that's true. Mr. Arachnikow, am I saying your name right, sir? How do you say your last name? Archanakow, your honor. Archanakow, I apologize. I just killed your last name but my sincere apologies. Mr. Archanakow, I'm sure that nobody on this panel has anything but great respect for Mr. Benningham and family and the good intentions in setting up the trust but my take on this is that the issue before us is pretty straightforward. It's whether in that settlement agreement Ms. Butcher's client did something that it shouldn't have done which gave rise to a fraud claim or breach of fiduciary duty claim. So focusing on that for a minute, please help us understand first as to the fraud claim, why that integration clause doesn't put an end to it because the full agreement was the agreement set forth in the settlement agreement itself. All right, first your honor, I'll address that first. Number one, it's not the full agreement because the agreement itself begins with stating unequivocally that for the avoidance of doubt the agreement, the custodial and the trust agreement both stayed in place. I have no idea what that means. It's a very strangely worded sentence and it's at the end of something which is headed entire agreement and then the text of that starts the agreement and a free schedule represent the full and complete agreement of the parties with respect to the claim. And the claim there I'm assuming is the amount of the attorney's fees that were in dispute that were resolved. Am I wrong about that? Yes, your honor. The claim was, the claim was in dispute. Let me go back a second. The claim that was in dispute and to be clear the release itself specifically is limited to the claim at issue. It does not at all. What was, okay and the claim was, the claim was, you can't, you gotta let me, if you want to hear my question you've got to ask it rather than the two of us talking over one another. So if the claim was the dispute over the liquidation of the funds in the trust that's what you're saying and that I think you're right about that. But so you're saying that the entire agreement language, the integration clause only goes to negotiations resolving the dispute over the bank's liability for the what happened to those funds and not the, not the attorney's fees themselves. That's what you're saying. Correct, your honor. It's trustee, it's custodial fees, but yes, your honor. The issue was basically there was a hedge fund that collapsed and the Benningham lost in excess of two million dollars. So there were misrepresentations and various frauds and things involved with that, with that dispute. Yeah, we're familiar, we're familiar with the but here's, here's the question. You had a fight with BNY Mellon and then both sides, sophisticated parties represented by counsel, go to the table and say, let's work it out. They work it out and seven years later you come forward and say, wait a second, we thought we were getting best pricing, we weren't getting best pricing and you sue them. That's the, that's what I understand the basic background to be. Am I, am I correct in the basic background of what brings us to this lawsuit? You're, well, you're correct in one regard, your honor, but, but, but, you know, the basic facts, yes. However, the disclosure that occurred here was accidental. This isn't like, this was the Benningham accidentally found out they were being over double bill. Okay. Well you, right. However, however it, however it came up, it came up and when it came up, there was a discussion between two sophisticated entities, a multimillion dollar trust and a bank represented by counsel and they worked out their deal. Now in that context, help, help me understand what is first with respect to the fraud claim, we'll get to the fiduciary duty claim in a minute, but with respect to the fraud claim, you say that this was fraud in the execution, but I'm struggling with that a little bit because it seems like the classic fraud in the inducement circumstance where you say, you told me something and that led me to do this, but it's not actually what really happened. Isn't that, isn't that the classic fraud in the inducement? You promised me best pricing and I, and that's what I thought I was getting, but I didn't get it. How is that fraud in the execution and not fraud in the inducement? Your honor? Well, I think where it becomes, where I see it, where I see a difficulty in distinguishing candidly between the two in this case is the following, is that the custodial fee was never changed. It was 1.5 basis point before the negotiations and it remained 1.5 basis point after the negotiations. It never changed. It remained the same and it remained the same even after the negotiations in an ongoing basis. How does that help you? Because you're not alleging that anything was omitted from the contract, saying that the contract remained the same. How do you get fraud in the execution from that? The entire time this relationship existed, the entire time this was going on, we don't know how long this went on for, but it went on for at least seven years, we believe. And it may have gone on for even longer than that. The debentment was being double billed on custodial fees. It has nothing whatsoever. The fact is, is that the discussion did come up on December 10th, 2010. The discussion did come up about the fees and BNY Mellon lied. They said that they were at their cost and they could not go any lower on the 1.5 basis point fee. That sounds like a fraud in the inducement claim. So just for the sake of discussion, let's say we thought that was fraud in the inducement, and that the parole evidence rule would typically apply. At that juncture, your argument is, and your only argument can be, as I understand it, that, well, it's not a fully integrated contract. Am I correct about that? Correct. It's not fully integrated. It does not whatsoever apply to the double billing at custodial fees. The agreement itself specifically says it's limited to an issue having to do with the hedge fund. So I don't know how we get to a point of it becomes integrated about something we didn't know about and couldn't have known about because they lied about it. I don't know how we get to integration when the agreement itself is very clear it's limited to the hedge fund matter. They had no awareness whatsoever that they were being defrauded for all those years with double billing and the custodial fees. They had no idea whatsoever. Yeah. So if I understand you correctly, you're saying we've got a claim that's got nothing to do with the hedge fund. It has to do with there was a fraud with respect to these other agreements that have existed for a very long time. That's the position you're taking? Then my question to you is when we read the document, which is the settlement agreement and it speaks to the claim, your assertion seems to be, or I thought it was, and maybe this was I was mistaken. If there was some representation, it was all with respect to the hedge fund. There was no representation about best pricing or anything like that that preceded that. Then we're into just a plain old fiduciary duty breach claim, aren't we? Because the only representations that could be fraudulent were the ones made with respect to the hedge fund. No? No, these fees have nothing whatsoever to do with the hedge fund, your honor. These fees are regular custodial fees on the Ben and Mims asset under management, 300 million plus that were held at BNY Mellon. This has nothing to do with fees in the hedge fund. Nothing whatsoever. This dispute has nothing to do with the hedge fund. Aren't the fees being charged pursuant to the custodial agreement? The 1977 custodial agreement, correct. There were multiple fees. There were multiple agreements subsequent to 77, but yeah. You're saying the fees have nothing to do with the hedge fund, but the fees arise from the trust relationship that governs the trust agreement governing the custodial. The bank was given the authority under the custodial agreement to basically handle this fund, and that's what the fee was charged for. They weren't charging a fee for anything else, were they? Your honor, I think here's the misunderstanding. I'm apologizing if the facts are a little bit unclear for some reason. To go back, the custodial agreement, first the fund gets set up. There is no hedge fund. This hedge fund is a separate agreement that's only around $2 million of 350 million plus that the Ben and Mims had under management. In 1977, there's a custodial agreement. In 1993, there is a trust agreement. There's updates to the fees along the way, but what this is about, the hedge fund was simply of the 350 million that Ben and Mims had invested and that BNY controlled, this was about $2 million of it. That was a separate dispute. What did the fees arise from? What were the fees for? The fees here are custodial fees, assets under management. For example, you put your money at a bank or whatever and they thought that's what they're doing here. They're charging double what they should be at least. The fees arose from basically the handling of the assets pursuant to the custodial agreement. Custodial, yes. Custodial fees, correct. Then you had the trustee agreement where BNY Mellon became the trustee who then negotiated with the custodian. They negotiated basically with themselves. They set their own fee ultimately. All those years, they set their own fee. Mr. Akinaka, the district court found that the claim, Benidem's claim failed as a matter of law because negotiating the settlement agreement was outside the scope of BNY M's fiduciary duty to Benidem. Could you comment on the district court's decision in that regard? It's completely erroneous, Your Honor. Very clearly, the agreement says that for the avoidance of doubt, the trust and the custodial agreement remained in full force and effect. In other words, that language now, the judge said he was able to determine the party's intent. I don't know how you do that on a motion to dismiss that the judge himself determines my client's intent. He determined that the intent of the parties with that language, I guess, was nothing. Isn't the intent of that language? Couldn't the judge read that and say, the logical, the reasonable, the only sensible way to view that is to say, this was a recognition that they're not kicking their custodial and trust agreements to the curb. They're still going to have a trust. They're still going to have the custodial relationship. We're settling our problems in the past. The custodian relationship just goes forward. Why is it out of line for the judge looking at that document to say, that's what I understand that to mean. That's what these parties were doing. They wanted to settle all their past disputes, put them to bed, and move ahead. What's wrong with that? Well, because first of all, the settlement agreement doesn't say that. It only settled a limited claim. But number two, it says for the avoidance of doubt. And the other question posed to me was, I asked this question, well, when did the fiduciary duty turn off? Because it never turned off. I mean, it says for the avoidance of doubt, those agreements remain in effect. Fiduciary duty as to what? Fiduciary duty according to our understanding. You're saying that as though it's a mantra. Fiduciary duty as to what? There's a fiduciary duty that encompasses the bargaining over the fees or the setting of the fees, as opposed to whether or not the fiduciary duty pertains to the scope of the custodian's handling of funds that were given it in trust, pursuant to the trust agreement and the PEF code that was incorporated by the language in the trust agreement. But that's the real issue here. The fiduciary duty, in my viewpoint, the fiduciary has an obligation, an affirmative obligation, to tell the truth about their fees, their custodial fees under management. And they were under an ongoing duty to do that. It wasn't just, they were under an ongoing duty, in-ring mushroom transportation and others. A fiduciary is under an ongoing obligation to tell the fiduciary the truth. And then ultimately- You got to stop for a second. Nobody's disputing that a fiduciary can lie to the person to whom they've got a fiduciary duty. No, I don't think that anybody's confused about that. What we're struggling with is you seem to be arguing that in an arm's length transaction between sophisticated parties, both represented by counsel, that there's an obligation to reveal other things about your business. Because that's what I hear the other side arguing. And that's what I understand the district court to have said. Let me just read you something from a Supreme Court decision out of the state of Pennsylvania. A confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms. But on one side, there is an overmastering influence. On the other, dependents trust justifiably reposed. Okay. That's the frame that I take it we have to take when we're asking whether in the context of this settlement, these parties who are now adversaries because they're fighting over a dispute, whether these parties owe each other a fiduciary duty in the context of settling their dispute. If that's the frame we've got. Your Honor, that's not solely the frame. I know that the district court attempted to push this through a lens. But this isn't, first of all, how are we on even terms when we don't even know the custodial fees being charged? We're not on even terms. Why stop? Why do you think you're entitled to know? That's the question, right? You seem to be taking it as a given that you are entitled to know their pricing structure. When you go into a client and say, hey, let me represent you. They say, I want to know everything you've charged any client you've ever had. You are not responsible to tell them that. You have a fiduciary obligation if you take them on as a client, but you're not required to tell them everything you ever charged any client, are you? I agree. Your Honor, I agree with that 100%. We wrote that in our brief that we agree that upon the initial hiring in 1977 or even 1993 and unequivocally, sure, the initial negotiation arms length, I'm not trying to violate that basic tenant of contract law. You seem to be because what you're saying now, Mr. Archanako, is in the context of settling this dispute, they owed you a fiduciary duty to tell everything they charged everybody else. Where does that fiduciary duty spring from? It clearly doesn't spring from this settlement agreement. What your argument has to be is that somehow in the custodial agreement that that makes its way into the settlement negotiation. That's the legal position you're taking, right? My legal position is that there's no authority that says that the information you'll help me ask for information. You got to stop. You got to stop. You saved quite a bit of time for rebuttal. Let's hear from Ms. Butcher. Go ahead. I'd really like an answer to this question. I understand, Mr. Archanako, that it's a frustrating thing for people because this is not an ordinary conversation. If you and I were sitting down and talking together, we wouldn't be talking over each other, right? I'd let you go and you'd let me go. This is a very stylized form of discussion. You have to stop when we're starting to ask questions because otherwise, it doesn't work. Here's what I'm trying to get you to answer. When I ask the question, where does the fiduciary duty spring from? You say, they're not entitled to lie. That's an answer that's not meeting my question. My question is, given that this was a dispute that was getting settled by two represented parties, the only way you can get a fiduciary duty into this is to say the custodial relationship, that in and of itself, that fiduciary duty obligates them in the context of a settlement discussion to reveal everything. And that's what I think your argument is. I'm trying to get you to verify that or tell me if I've misunderstood you. Can you do that, please? Your Honor, the fiduciary duty in this matter we've briefed arises from four different areas, the custodial agreement, the trustee agreement, the closeness of the parties, including by using the same attorneys from time to time, and also by the fact that they were running the hedge fund. However, the duty arises from the trust agreement, the fiduciary agreement and trust agreement, which unequivocally incorporates the entire fiduciary code of Pennsylvania into the agreement itself, along with additional duties, Your Honor. All right. It is a very broad agreement. The agreement itself is very broad, and there's no limitation there whatsoever. I understand that we keep talking about it being adversarial, but this discussion between the parties started in January of 2010 and did not end until April of 2011, and the entire time they remained in the relationship. Let me ask this. Is there anything in the custodial agreement or the trust agreement or the PEF code that would require the bank to give you the lowest fee schedule, the lowest fee that it charges any client for a similar undertaking? Is there anything in those agreements that requires that? I believe that the duty itself requires that, but in terms of specific language that says we will always give you best pricing or something like that, no, that specific language doesn't appear, but we believe that those agreements require that. Not at the initial inception of the agreement, to be clear, Judge, you're allowed to negotiate initially, but substantive agreements between the parties, even the case law cited by the district court, and the subsequent agreements, there's a higher standard. The subsequent agreement you're talking about is the settlement agreement, right? No, it's not just the settlement agreement. They entered into agreements over the years, and yes, there is also the settlement agreement that occurs during this process, but a new fee agreement is set. I got you. There's a new fee agreement set. I got you. My client remained client for seven years. I'm sorry. I apologize. It went over time. I wanted to follow up on that fiduciary duty, because this has to do with the district court's finding. The court reasoned that a fiduciary duty claim depended on the presence of a continental relationship between the parties, and an opportunity to abuse that relationship on one side, and the district court found such a relationship completely lacking. Doesn't that affect the ultimate determination of your case? Well, certainly, the court may... I believe the court obviously made an erroneous finding about a lack of duty. I don't know how else to say it. We briefed it. I've said it here today. There was a duty under the trust agreement that was always in full force and effect, and the reason that the language appears in that agreement that says, for the avoidance of doubt, was so that there was no doubt that the fiduciary duty was always in effect. Ben and I never agreed that there was even a short time period that BNY Mellon was permitted to lie. The whole time they were under a fiduciary duty. We talk about it as a negotiation. It's a fiduciary being required to tell the truth when being asked questions, because they got caught about something else, and then we're here questioning whether they had a way to get out of telling the truth to their fiduciary. I think that the district court's decision is clearly erroneous based upon the case law. Perhaps you can agree with me on one point. Does not a fiduciary duty depend on a confidential relationship? Yes, Your Honor. A special relationship, a confidential relationship, but there's different language that discusses those things. Oftentimes giving rise by virtue of a written agreement, but it can be given rise by virtue of a special or confidential relationship between the parties that's close in nature. Even if we didn't have a written agreement, there's a separate closeness to the parties here using the same attorneys, even sometimes during the same transactions. That's how close the parties are. Your argument is that, in fact, there was a confidential relationship. Yes, Your Honor. As to fees. Okay, Ms. Butcher, can we hear from you? May it please the court, Jamie Butcher, on behalf of Appellees, the Bank of New York Mellon Corporation and the Bank of New York Mellon. I think Your Honor said it correctly. This is a straightforward case. I think you said that up front. This is a straightforward case. The district court was correct in dismissing both the breach of fiduciary duty claim and the fraud claim with prejudice. The first decision that came out dismissed the fraud claim with prejudice, and the judge allowed plaintiff another opportunity to amend the complaint and then dismissed the breach of fiduciary duty claim with prejudice after the third time the plaintiffs have amended the complaint. The judge got it. Ms. Butcher, let's get you to go straight to Mr. Archanako's argument. Leave the fraud piece to the side. The fiduciary duty, the assertion that this was not a fully integrated agreement and that this complaint is not just about the hedge fund and the settlement of the hedge fund dispute. This is about a breach of fiduciary duty springing from the custodial and the trust agreements and false statements made by your client in connection with pricing in that overall relationship. Now, I may not have done justice to Mr. Archanako's position, but I understand that to be the nature of it. Why don't you tell us why what is what's in error about his assertion that this complaint brings up more than the settlement agreement and it involves wrongful dealing by a fiduciary outside that context? I think in response, what they were complaining about, this alleged misrepresentation was in relation to the fees and the settlement agreement very clearly sets forth that a cash payment in A-508 and the appendix, the settlement payment, there was a payment of a cash payment and then also they entered into a seven-year term for fees attached as Exhibit A to the settlement agreement. That is what the plaintiff is complaining about. They're complaining. Well, that's what I'm asking you. He says the complaint is about more than that. I'm asking you to help us understand as right when he says the complaint went beyond that. He is not right, Your Honor. What they are complaining about in the basis of their breach of fiduciary duty claim or the breach of that breach of fiduciary duty claim is that the fees were misrepresented during the settlement negotiation, which is attached as Exhibit A to the settlement agreement. This is a fully integrated settlement agreement. Paragraph seven of the settlement agreement says this agreement and the fee schedule represent the full and complete agreement of the parties with respect to the claim. What they are complaining about this misrepresentation relates to the fees, which are the fee schedule, which is attached. It is a fully integrated agreement and the parties were clearly not in a confidential relationship at the time that they negotiated the settlement agreement, which is what the district court found. It was clearly two sophisticated parties, an arm's-length negotiation. Benedim had threatened litigation against the bank. They had their own counsel. They were represented. Paragraph four of the settlement agreement states that each party represents and warrants that they have read and understood the terms and they're executing it on their own behalf and advice of counsel. Paragraph four says that. Sure, and here's what you need to speak to because he acknowledges, I mean he can't do acknowledge that the document says what it says, but he keeps saying, hey, wait, it says to be, you know, so that there's no mistake. The other agreements in place, the custodial agreement and the trust agreement, those things are not affected by this and the assertion is that fiduciary duties springing from those agreements were always in place in effect and therefore when you represented or said things about your fee schedule that were not true, you were in breach of your fiduciary duty. What's the error in that? Your honor, the district could actually squarely address that in its opinion and it said that the Benedim cannot escape the parole evidence rule by relying on that line about the custodian agreement and the trust agreement remaining in full force in effect. That just simply means that they are still valid. It's acknowledging that those agreements exist and they are still valid. It does not eviscerate the rest of the integration clause which says that the entire agreement and the fee schedule represents the full and complete agreement of the parties. Isn't it the case that the Benedim was lied to? It was told that we're going to give you the best rate possible and it relied on that representation but that did turn out to be the case in the end. There were in fact more favorable rates that might have been considered. Your honor, we wouldn't acknowledge that that's even true or that that's even alleged in the complaint. The complaint actually, their second amended complaint actually says that within five years of 2018, they found out that BNY Mellon was charging different rates to clients. I would dispute that there's even any allegation in the second amended complaint that at the time of the negotiation that there was a misrepresentation as to the fees being the lowest or what the fees were being charged. I don't think that's even alleged in the complaint and at the same time, it doesn't matter. That's why there are such things as the parole evidence rule because the parties had the entire agreement. If they wanted that to be part of the agreement, they should have put it into the settlement agreement that it was being charged the lowest rate or our most favored nation's provision. That is not in the settlement agreement. Or frankly speaking, you think it would be in the custodian agreement that when the funds are given over to an agent to handle that you put in that agreement. If there's some understanding that I'm going to give you this money to handle and invest for me in trust, I want you to give me the lowest rate you charge any similar situated client, you put that in the agreement. But that's not in there. I understand Mr. Arconagos is arguing and I apologize, I mispronounced that name, is arguing that that obligation arises from the nature of the relationship, but the PEFCO doesn't even say that. You're correct, your honor. It's nowhere in the probate states and trust code. It's not in the custodian agreement, not in the trust agreement and not in settlement agreement. There is no obligation on behalf of the bank to charge the lowest fee to any of its customers and certainly not to the pendulum and it's not what they agreed to. Well, what's the remedy for a party if they're in negotiations and they are promised that they're going to get a certain level of pricing and they think that's part of the deal? Your bottom line assertion is, yeah, you didn't read the agreement carefully enough because if you had, doesn't matter if we lied to you, it's not in the agreement and therefore you're out of luck. That is the legal position. Parole evidence says it doesn't matter what we said to you before and it doesn't matter that we're your fiduciary before when we were allegedly lying to you. It's all in this document and you're done. That's the bottom line position, right? Well, I think the district addressed that very issue in appendix page 19. It said that the material misrepresentation and get away with it under such a circumstance, then there may be a claim for fraud. But the point is that if the misrepresentation is not made in the context of a confidential relationship, there cannot be a separate claim for breach of fiduciary duty. There wasn't a confidential relationship here and there could be a separate claim for fraud. They've made a claim for fraud and the claim for fraud was thrown out because of the parole rule and that's what you're relying on here, right? That doesn't matter what we said to you to get you to sign this thing. If you read the agreement, you'd see it's not in there. So, tough. That's the position, right? Well, correct your honor. It would be a fraud claim, but it would be also barred by the parole evidence rule as held by the district court and correctly so. And the assertion by Mr. Archinoco on behalf of the foundation that nobody expected that integration clause to cover the custodial relationship or the trust relationship and we said so in the settlement agreement. In your view, that doesn't make that less than integrated document, right? That's correct, your honor. So, when they say there was a fraud that occurred and it occurred and a breach of fiduciary duty which occurred and it occurred, it may have occurred in the context of the Hedgefoot settlement, but it occurred outside that context as well. What's your response? It didn't occur. There's nothing that happened What they are complaining about and I may have said this before, I apologize, but they are complaining about the misrepresentation that forms the basis of their both their fraud and their misrepresentation claim is that there was a misrepresentation about the fees being charged which is clearly part of the settlement agreement and the attachment to the settlement agreement and that is what the integration clause addresses. The agreement and the fee schedule. That's what they're complaining about. That's why it's barred by Help me out when you say that's what they're complaining about. Can you take us into the complaint and say, look, here's where the I'm looking at right now at paragraphs starting at about paragraph 98 and running over to paragraph 117 of the complaint which is where their fiduciary duty breach claim is set forth and if I've got that right, it's a right along starting at appendix 221. Is there something in there that limits their claim to the hedge fund settlement context? I'm sorry. Are you in the second amendment complaint, your honor? The second amendment is I'm looking at their at their first amended complaint which and their second amended complaint I'm assuming is got the same breach of fiduciary duty claim in it. Maybe I'm wrong about that. Maybe there's something different. I'm just trying to figure out because not to put too fine a point on it, as sometimes happens, we had ships passing in the night it feels like. Got Mr. Archanakos saying on the one hand, hey, this is about more than that settlement of the hedge fund issue. This is about the broader fiduciary relationship and that's we're complaining about. They're relying to us in that context and I hear you say, no, no, no, it's all just about the settlement agreement and that's what the district court agreed with you on and I'm just trying to get somebody to take me, okay, well, let's look at the complaint and you tell me with respect to the fiduciary duty claim, is it limited or not limited? If you take a look at appendix 82, say that one more time, the number 382, which is their second amendment complaint in paragraphs 36, 37, 38 and 39. Yep. And this forms a basis of what they're, this is what they added, your honor, when they amended the complaint, the judge said, you need to add more specificity as to what happened related to the misrepresentation that purportedly took place and so they added A.S. is referencing the Bank of New York Mellon attorney and so this is where they're complaining that the 1.5 basis point being charged should have remained the same based upon representations that were in the made by the bank's attorney and that's what they're complaining did not happen, which forms a basis of their fraud claim and their breach of fiduciary duty claim, which are part of the settlement agreement, your honor. So the paragraphs that you point to as limiting the character of their breach of fiduciary duty claim are once again what? It's related to the basis points, the 1.5 basis points being charged. You know, I'm sorry, it wasn't clear. You just quoted, you just said, hey, take a look at these paragraph numbers in the second amendment complaint. I'm asking you to repeat that. Which are the paragraphs? 36, 37, 38. Right, okay, good. On page 382 of the appendix. Thank you. Go ahead, did you finish answering? I did. I'm looking, I hadn't read this before, hadn't focused on it. Paragraph three of the release says, it's entitled Release of BNY Mellon. There's a long paragraph which basically sets out the entities in some detail. The next of appendix volume two, I believe it is. But you're more familiar with this piece than I am. But it says, Benidorm understands and acknowledges the possibility that it may discover facts or claims in the future which are different from those currently believed to exist and upon which it relies and agree to this release. Notwithstanding that possibility, Benidorm agrees that this agreement shall be binding in any event and the release shall be enforced and any agreement that does not extend to facts or claims of which Benidorm is not aware at this time are waived. So why are we here? Why isn't the entire basis upon which the complaint is brought waived pursuant to that paragraph of the release? Without getting all the technicality, the parole evidence and everything else. Can't we just keep this thing simple? That's another basis, your honor. Yes, they released all claims under the release paragraph as well, as well as integrating the agreement in paragraph seven. Because we're not being told that Benidorm found out things after the agreement was entered into that it wasn't aware of. Well, according to paragraph three, that may be true, may not be true. Forget the parole evidence rule. It's waived. Let's assume that everything he's saying is true and that BNY decided to take Benidorm, for whatever reason, to the cleaners and charge him the highest fees known to mankind. And they didn't know that at the time and they were in a fiduciary relationship. Let's assume that. Again, what difference does it make? It's been it's been waived. And I would also add, your honor, in appendix 515 in the comments section, it states that BNY Mellon reserves the right to amend its fees if the service requirements change in a way that materially affect responsibilities or costs, which is another. I mean, there's just nothing in this agreement that would indicate that BNY Mellon has to give them the lowest fees of any customer and that that fee has to remain consistent over time. There's just nothing there. Your honor, I would I would submit that the district courts, unless anyone has any further questions for me, the district courts opinions should both be affirmed and the two claims should be dismissed with prejudice. OK, I have no further questions. Mr. Jordan, Judge Fuentes. OK, Mr. Naka, we let you go quite a bit over on your initial presentation. I'm not sure to what extent that was really helpful, but I'm going to ask you to really hold yourself to the five minutes that you reserved and let us ask questions during during your rebuttal. Go ahead, sir. It's wrong. Your honor, I apologize. I'm getting some background, so I apologize. Yeah, I hear it, too. I don't know why that's happening. Oh, no, Patrick. Let me. You unmuted your your. Yes. Try talking now. OK, is that better? I apologize. He's a witness. Well done, Patrick. Thank you. Thank you, Patrick. I just wanted to address briefly just the parole evidence rule for one moment, which is that. Well, forget the parole evidence rule. Why isn't this claim waived under paragraph three of the release? Why isn't it waived? Let's assume you're right about the parole evidence rule. Your honor, I'm not. You know what, your honor? You're raising an argument for the first time today for the defendants. The best I could tell you is that the release unequivocally says it's only releasing the claim about the hedge fund. It doesn't say anything about releasing these claims whatsoever in there. And leaving that aside. When you say when you say it doesn't say anything about that whatsoever, Judge McKee has just quoted on the record the second paragraph of paragraph three of the of the release, and it does say something about other things. It says very clearly that we're releasing, quote, shall be enforced any argument that release does not extend to facts or claims of which Benedim is not aware at the time of this execution is hereby waived. That's pretty darn broad. Why doesn't that reach beyond this settlement agreement? Your honor, my apologies. I don't have the agreement directly in front of me, but I believe earlier in that paragraph, just going off recollection, isn't it earlier in that paragraph where it's talking about this is specifically related to the claim? So I don't. I don't see claim in the. No. There's language specifically in the release that says this release extends to the claim. I don't believe that there's language there that says this release releases other claims other than that one claim. Other than the claims having to do with the hedge fund. It is as broad as any release I have ever seen, and I'd served in when I was in county police court, I served in orphans court for a number of years. And I've seen a lot of these releases. This one is broader than the broadest one I've ever seen. I mean, that's the only thing it doesn't include into this language saying is waived in perpetuity, but that's the effect of what is in there. It does. It does specifically say in the very next paragraph that it doesn't reach nor is intended to work for the benefit of certain other entities, and then it names those entities. So it does know it does know how to limit, right? Because there is a limit, but it doesn't limit it as the BNY Mellon or the dispute. That's the I believe it does limit to the dispute. I don't I apologize. I don't have the direct language in front of me. I believe that there is language there that discusses the claim. That's that's true in there. It is in there. It talks about what the effect of the waiver goes to damages, judgments, executions, claims, and demands whatsoever in law or in equity, in tort or in contract, whether known or unknown, whether liquidated or unliquidated, whether contingent or fixed, which against the BNY Mellon release parties the Benningham release has ever had, now have, may ever have, or may ever claim to have, for, upon, or by reason of any matter, cause or thing whatsoever relating to arising out of, or in connection with, not claims, but okay, the claim is there, but in connection with A, the investment, B, the fund, C, Mellon HBV's role as investment advisor to the fund, and or D, the claim. Correct. That's exactly what it says. It's limited to the claim, the fund, the HBV fund. And or the claim, in ordinary language would mean we're including the claim, but we're not limiting it to the claim because it lists it out. The investment, the fund, and then the role as investment advisor, those are all separate from, and then it says, and or, but your reading of that is, no, it's just the claim and only the claim, right? It says, your honor, it says the investment, the fund, and their role. This is talking about the hedge fund investment. It's not talking about the custodial or, it's not talking about the custodial agreement or the trust agreement. This is talking about the separate $2 million hedge fund investment, their role in the invest, they were the promoter of that investment. They, they were the, the languages that they, they are releasing the claim about the investment, which is the $2 million HBV investment, the fund, that's the fund. That's the $2 million, the HBV fund. Mellon HBV's role is the investment advisor to the fund and or the claim. And the claim here has to do with those. It doesn't have anything what's to do with these other things. It only has to do with HB, Mellon's role as the advisor to the fund, you know, gotcha. Gotcha. Now let's assume, let's assume you're right for a second, that everything about this release broadly stated as it is, is focused solely on the hedge fund investment and the settlement of that. Assuming that's true, take me back into the complaint and you tell me why Ms. Butcher is wrong that the second amendment, second amended complaint isn't about this very dispute, not some other thing that happened between the parties. Yes, Your Honor. Paragraph, I don't have the exact paragraph 64, Your Honor, inside the fiduciary duty claim. Subparagraph D includes this claim that I've advised the court exists that we believe we were bringing. Paragraph 64 of the second amended complaint. That's what you're relying on. Correct. Okay. Yes, Your Honor. Paragraph A and also paragraph D are separate from paragraph B and C, which zero in on the affirmative representation made during the discussions, but A and D are broader. And I would point out Ms. Butcher, what she said to me today was very interesting. She said, well, the evidence we have is we admitted that we were doing it for five years. So this really doesn't have to do with the representation made during the course of these discussions that was actually said today. So they want it both ways. They want to say when it serves their purpose, this has to only do with that. But then simultaneously, they tell you that, well, two years, two years after it really, this arises two years after the and that would be completely separate. And that's what we're saying is that they are separate claims. All right. Got you. Yeah. Any other questions, Judge Fuentes? No. Okay. Judge Jordan? Okay. Counsel, thank you very much for the argument. We'll take the matter under the rise.